# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9719 | **DATE** | 10/30/2002 |
| **CASE TITLE** | Gelco Corporation, et al. vs. Major Chevrolet, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ __.

(3) ☐ Answer brief to motion due__ ___. Reply to answer brief due___ __.

(4) ☐ Ruling/Hearing on ___ __ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for ___ __ at __ ___.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ _ at ___ __.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ __ at __ ___.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. The Court denies defendant's motion to dismiss Count I and grants its motion to dismiss Count IV [5-1] with leave for plaintiffs to replead by 11/26/02. If an amended complaint is not filed by that date, the dismissal of Count IV shall be deemed a dismissal with prejudice. Defendant is directed to answer Count I by 11/26/02. Defendant's motion to transfer venue [5-2] is denied. Status hearing is set for 11/26/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 3 1 2002 | 12 |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | | | 10/30/2002 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD | |
| | | | mailing deputy initials | |

GELCO CORPORATION and )
CUSTOMIZED AUTO )
CREDIT SERVICES, INC., )
                     )
     Plaintiffs, )
                     )
     vs. ) No. 01 C 9719
                     ) Judge Joan H. Lefkow
MAJOR CHEVROLET, INC., )
                     )
     Defendant. )

### MEMORANDUM OPINION AND ORDER

Plaintiffs, Gelco Corporation ("Gelco") and Customized Auto Credit Services, Inc.

("CACS"), allege that defendant, Major Chevrolet, Inc. ("Major Chevrolet"), an automobile

dealership, engaged in "a massive pattern of fraud," including but not limited to falsification of

information on customer credit applications and misidentification of vehicle features in other

documents that defendant submitted to plaintiffs for financing. (Compl. ¶ 1.) Plaintiffs are

subsidiaries of G.E. Capital and are Delaware corporations with their principal place of business

in Barrington, Illinois. Defendant is alleged to be a New York corporation with its principal

place of business in Long Island City, New York. Plaintiffs plead more than $75,000 in

controversy, invoking the jurisdiction of this court under 28 U.S.C. § 1332(a)(2). The complaint

alleges common law fraud under Count I, breach of contract under Counts II and III, and

violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),

815 ILCS 505/2, under Count IV. Defendant has moved to transfer this case to the United States

District Court for the Southern District of New York and to dismiss Counts I and IV. For the

reasons set forth herein, the court denies defendant's motion to transfer venue, denies its motion

to dismiss Count I, and grants its motion to dismiss Count IV.

## FACTS

The allegations of the complaint are taken as true for the purpose of this motion. On

October 30, 1989, defendant entered into a "Dealer Lease Plan Agreement" (the "Lease

Agreement") with Gelco. According to the Lease Agreement, defendant would negotiate a lease

with a customer and submit the lease to Gelco. If Gelco agreed to the lease, then Gelco paid

defendant the negotiated price of the lease less any acquisition fees and down payment.

Defendant would then assign to Gelco the lease and all defendant's right, title and interest in the

vehicle.

On December 21, 1995, defendant entered into a "Dealer Retail Agreement" (the "Retail

Agreement") with CACS. Pursuant to the Retail Agreement, defendant would negotiate a retail

sales contract with a customer and submit the contract to CACS. If CACS agreed to the contract,

then CACS paid defendant the negotiated price of the contract less any acquisition fees and down

payments. Defendant would then assign to CACS the retail sales contract and all of defendant's

rights therein.

During the course of these business relationships, however, plaintiffs allege defendants'

employees engaged in the following fraudulent schemes against them:

## A.     The credit fraud scheme

Under the Lease Agreement, defendant was required to complete a customer credit

application for each lease. Defendant's employees interviewed and asked the customer to

provide past and current employment information including job title, salary and, occasionally,

2

proof of income. Based on this information, defendant's employees would complete the customer credit application in New York and fax it to Gelco at its Barrington headquarters.

Gelco also retrieved credit bureau reports describing the customer's credit history. The reports, however, did not typically include the customer's employment information.

Using the customer credit application and the credit bureau reports, Gelco determined the customer's credit-worthiness and provided a "credit call" for the customer. Gelco would either approve the lease with no stipulations or with certain stipulations, or reject the lease. Gelco then faxed its decision back to defendant. If Gelco and defendant agreed to move forward on the lease, then defendant completed the necessary paperwork and Gelco provided payment for the lease to defendant.

Beginning around April 1999, defendant engaged in a scheme to defraud Gelco. Defendant purposefully misrepresented information on the customer credit applications that it faxed to Gelco. Specifically, defendant misrepresented the customers' employment information, including job status, salary, and secondary income sources and amounts. For example, a customer who reported that he or she worked as a cable splicer with a monthly salary of $2,400 would be reported by defendant as a regional manager with a monthly income of $6,300. On numerous occasions, defendant also falsified other credit information including but not limited to the amount of money the customer provided as down payment for the lease. Furthermore, defendant substituted a third party's credit information for that of the customer. For example, in situations where the customer had insufficient credit to lease a vehicle, defendant would list a family member or friend with better credit as the lessee on the customer credit application and

3

then submit that application to Gelco. The customers, however, had no knowledge of defendant's misconduct.

Based on defendant's misrepresentations, Gelco relied on false credit information to make its credit decisions. Gelco agreed to finance leases or provide more favorable credit terms than it would have had it received accurate customer credit applications from defendant. As a result of defendant's misrepresentations, Gelco experienced significant losses from customers' lease defaults and failures to make timely lease payments.

**B.      The vehicle misidentification scheme**

Defendant also misidentified vehicle features in documents it submitted to plaintiffs in the following ways:

*1.     Leased vehicles*

For leased vehicles, defendant was required to submit to Gelco a properly completed lease form and a vehicle condition report providing the purchase price of the vehicle and identifying the vehicle's make, model and "trim level" (i.e., the package of amenities and features included in the vehicle). Beginning around April 1999, defendant engaged in a scheme to defraud Gelco. Defendant purposefully misidentified trim levels and value added options on documents provided to Gelco. The false documentation was then used to set the residual value of the vehicle, which is the anticipated resale value of the vehicle at the end of the lease. Because the vehicle's trim level and options were overstated, the residual value was likewise exaggerated. For example, a 1995 Nissan Pathfinder "XE" had a residual value of $10,086. However, the same model with a higher trim level of "LE" was $14,060, or 39 percent higher than the "XE." This, in turn, minimized the vehicle's depreciation value and, thus, meant that

Gelco received monthly payments that were below what it would have received had the information been accurate. Moreover, when the lease terminated, Gelco received a vehicle worth significantly less than the stated residual value.

2.    *Retail vehicles*

For vehicles sold to the customers under retail sales contracts financed by CACS, defendant was required to submit documentation identifying the sale price negotiated with the customer, the "book value" or "trade-in value" of the vehicle, the trim level, and any other options already present or installed by the dealer. Beginning around August 1998, defendant engaged in a scheme to defraud CACS. Defendant purposefully misidentified trim levels and vehicle options on documents provided to CACS. Defendant further misrepresented the trade-in value of the vehicles. For example, in early 2000, the trade-in value of a 1997 Nissan Altima "GLE" was $14,850. The trade-in value of the same model with the corrected (and lower) trim level of "GXE" was $10,625. By increasing the trade-in value of the vehicle, defendant increased the maximum amount financed from CACS on deals that CACS would have financed for a lower amount or would not have financed at all had it received accurate information. As a result of defendant's misrepresentations, CACS provided financing above and beyond its 115 percent limitation of proper trade-in value of vehicles. Furthermore, defendant's falsification of the trim level and options artificially decreased the vehicle advance/trade-in value ratio and, at times, resulted in the customer receiving more favorable credit terms than CACS would have provided if it had received accurate information.

## C.    Other fraud schemes

Defendant also engaged in other fraudulent conduct, which violated the parties' Lease and Retail Agreements. Specifically, defendant sold Gelco vehicles that had been previously repurchased by the manufacturer, known as lemons; vehicles with odometer discrepancies, which caused improper residual value calculation; vehicles that had been used as taxis; vehicles of Canadian origin; and vehicles without free and clear titles. Furthermore, on other occasions, defendant failed to provide perfected liens, free and clear of claims or other encumbrances, to CACS.

Based on these facts, Gelco and CACS jointly filed a four-count complaint against defendant on or about December 19, 2001. Count I alleges a claim of common law fraud because defendant engaged in the aforementioned schemes with the intent to mislead plaintiffs and plaintiffs reasonably relied on defendant's misrepresentations, which caused them over $2.95 million in damages. Count II alleges defendant breached the Lease Agreement with Gelco because defendant provided false information on customer credit applications or misidentified the vehicle features and its title to Gelco. When Gelco realized the breach, defendant refused to repurchase the vehicles from it. Count III alleges defendant breached the Retail Agreement with CACS because it fraudulently misidentified vehicle features and failed to provide perfected liens. When CACS realized the breach, defendant refused to repurchase the contracts from it. Count IV alleges defendant violated ICFA based on its credit fraud and vehicle misidentification schemes.

6

**DISCUSSION**

Defendant moves to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Moreover, defendant moves to dismiss plaintiffs' claims of common law fraud under Count I and violation of ICFA under Count IV.

**A.    Motion to transfer venue**

A motion to transfer venue is governed by 28 U.S.C. §1404(a), which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To qualify for a transfer, (1) venue must be proper in both the transferor and transferee courts, and (2) the transfer must be for the convenience of the parties and the witnesses and in the interest of justice. *See Pasulka* v. *Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001), quoting *TruServ Corp.* v. *Neff*, 6 F. Supp. 2d 790, 793 (N.D. Ill. 1998). The moving party bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc.* v. *Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989), quoting *Coffey* v. *Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The court "must consider the statutory factors in light of all the circumstances of the case." *Id.* at 219. The parties do not argue that venue is improper in this district or the transferee district. Instead, the parties dispute whether transfer is warranted for the convenience of the parties and witnesses and whether transfer serves the interest of justice.

*1.    Convenience of the parties and the witnesses*

Factors the court considers and weighs in evaluating the convenience of the parties and witnesses include the plaintiffs' choice of forum; the situs of material events; the relative ease of access to sources of proof in each forum; the convenience of the witnesses; and the convenience

7

of the parties of litigating in the respective forums. *Brandon Apparel Group, Inc.* v. *Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999) (internal citations omitted).

    a. Plaintiffs' choice of forum/situs of material events

    Plaintiffs' choice of forum is generally entitled to substantial deference, particularly where the chosen forum is the plaintiffs' home forum. *Brandon Apparel*, 42 F. Supp. 2d at 833; *see United Air Lines, Inc.* v. *Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998) (Unless the balance weighs strongly in favor of transfer, plaintiffs' choice should not be disturbed).

    Defendant argues that plaintiffs' choice of forum should be given "little weight" because it asserts that almost all of the relevant events alleged in the complaint took place in New York. (Def. Mem. at 13.) Defendant asserts it executed the Lease and Retail Agreements and performed under those agreements at its automobile dealership in New York. Moreover, defendant points out that it created the allegedly fraudulent documents it sent to plaintiffs in New York. In support of its assertions, defendant relies on, most notably, *Law Bulletin Publ'g, Co.* v. *LPR Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998), where the court transferred a case to the Southern District of Florida even though the plaintiff's choice of forum was its home forum, Illinois. The court recognized that Illinois had some connection to the case but determined that other factors, particularly that Florida was "the situs of the overwhelming majority of material events[,]" strongly outweighed the deference given to the plaintiff's choice of forum. *Id.* at 1017-18, 1021.

    Defendant's reliance on *Law Bulletin*, however, is unavailing. The schemes that defendant engaged in against plaintiffs were "by [their] nature interstate." (Pl. Resp. at 12.) For every act by defendant in New York, there was a countervailing act by plaintiffs in Illinois.

Defendant allegedly altered customer credit applications and misidentified vehicle features in other documents and faxed those documents to plaintiffs in Illinois. Plaintiffs' employees reviewed the documents and approved the lease or retail sales contracts. After approval, plaintiffs sent the payments to defendant in New York. Defendant's breach of the Agreements occurred in Illinois because defendant sent the fraudulent documents to plaintiffs there. Therefore, although New York has some connection to the litigation, the situs of material events is mainly Illinois. Thus, this factor disfavors transfer.

Because plaintiffs have chosen the Northern District of Illinois; it is their home forum; and the situs of material events is mainly in Illinois rather than New York, defendant has not established that transfer is appropriate under these criteria.

### b. Relative ease of access to sources of proof

The parties demonstrate that the sources of proof are located in both forums. The customers who can verify the accuracy of their information on the customer credit applications and vehicles that defendant misidentified in other documents to plaintiffs are mostly located in New York. However, the documentary evidence such at the lease and retail sales contracts are mostly located in Illinois. Thus, this factor neither disfavors nor favors transfer.

### c. Convenience of the witnesses

"The convenience of the witnesses is often viewed as the most important factor in the transfer balance." *Brandon Apparel*, 42 F. Supp. 2d at 834, quoting *Rose* v. *Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). In evaluating this factor, the court considers the number of witnesses located in each forum (although determination of venue should not depend on which party submits a longer witness list, *Brandon Apparel*, 42 F. Supp. 2d at 834), and the

nature, quality, and importance of their testimony. *See Rohde* v. *Cent. R.R. of Ind.*, 951 F. Supp. 746, 748 (N.D. Ill. 1997) ("[T]he Court considers not only the number of witnesses located in each forum but also the nature and importance of their testimony. [The movant] bears the burden of establishing who [the] witnesses are, what their testimony will be, and how vital that testimony will be to the case") (internal citations and quotations omitted); *United Air Lines*, 8 F. Supp. 2d at 799; *see also Brandon Apparel*, 42 F. Supp. 2d at 834 ("[T]he court will not consider the convenience of unidentified witnesses"). The court most also consider the ability to compel hostile or unwilling witnesses to attend. *Bousis* v. *Marriott Int'l, Inc.*, 47 F. Supp. 2d 1004, 1006 (N.D. Ill. 1999).

Defendant argues that the majority of witnesses are located in New York. As potential witnesses, defendant points to its customers and its 250 employees who purportedly live in New York and were involved in the transactions with plaintiffs. However, defendant fails to provide a list of witnesses because it asserts that it "is forced to guess" who was involved in the alleged schemes based on plaintiffs' "vague allegations." (Def. Mem. at 10; Reply at 7.)[1] Nonetheless, defendant speculates that most of the individuals involved in the transactions are no longer employed with it, making them third-party witnesses who will not testify unless subjected to the court's subpoena power.

Plaintiffs respond that most of their key witnesses live in Illinois and work at plaintiffs' Barrington headquarters. Plaintiffs submit their Federal Rule of Civil Procedure 26 initial disclosure list of witnesses, indicating that fourteen of eighteen witnesses are located within this

---

[1] Defendant claims it will identify its witnesses when it files its initial disclosures under Federal Rule of Civil Procedure 26. (Reply at 7.) Defendant did not submit its Rule 26 disclosures to the court and, thus, defendant identifies no witnesses.

10

district. According to plaintiffs, the testimony of these witnesses will assist them in demonstrating the detail, scope and impact of defendant's schemes. Plaintiffs, however, concede that two of its witnesses, a current and former employee, reside in New York.[2]

Although defendant argues that plaintiff's allegations concerning its schemes are insufficient for defendant to identify witnesses, defendant does not challenge the sufficiency of plaintiffs' breach of contract claims in its motion to dismiss. At the very least, defendant could still produce witnesses with respect to those claims but it fails to do so. Plaintiffs identify their key witnesses, most of whom live in Illinois and identify the relevance and importance of their testimony to this case. Although two of the witnesses are located in New York, they are former or current employees, which indicates they will most likely testify on their own volition. Thus, this factor disfavors transfer.

### d. Convenience of the parties

In evaluating the convenience of the parties, the court considers their residences and their ability to bear the expenses of litigating in a particular forum. *Brandon Apparel*, 42 F. Supp. 2d at 834. "Transfer is inappropriate if it 'merely transforms an inconvenience for one party into an inconvenience for the other party.'" *Id.*, quoting *Chemical Waste Mgmt.* v. *Sims*, 870 F. Supp. 870, 876 (N.D. Ill. 1994).

Defendant argues that although plaintiffs are located in this district, defendants are located in the transferee district and plaintiffs have lease and retail agreements with New York

---

[2]According to defendant, one of those witnesses is a former agent for plaintiff who had weekly contact with defendant and has testimony, which "is essential to rebut plaintiffs' claim that Major Chevrolet breached the contracts and committed fraud by selling vehicles previously identified as 'lemons.'" (Def. Mem. at 11; Def. Ex. A. ¶ 8.)

residents. This, however, does not demonstrate that plaintiffs would bear less expense in litigating the case in New York than defendant would bear in litigating the case in Illinois. Indeed, neither party demonstrates that one party has a better financial ability to bear the expense. It appears, however, that granting the financial advantage for defendant of transfer to New York would merely shift that expense to plaintiffs. Thus, this factor disfavors transfer.

2.    *Interest of justice*

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (internal citations omitted). "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," such as likelihood of a speedy trial and, in a diversity case, familiarity of judges with applicable law. *Id.* at 221. The relation of the communities to the issue of the litigation and the desirability of resolving controversies in their locale has also been cited as a factor. *See Energaire Corp.* v. *E.S. Originals, Inc.*, 99 C 3252, 1999 WL 1018039, at *4 (N.D. Ill. Nov. 2, 1999) (Gettleman, J.) (listed among "public interest factors").

a. Likelihood of a speedy trial

FEDERAL COURT MANAGEMENT STATISTICS FOR 2001, on which plaintiffs rely, shows that civil cases were disposed within an average of 5.6 months or proceeded to trial within an average of 26.3 months in the Northern District of Illinois compared to 7.2 months and 24.4 months, respectively, in the Southern District of New York. (Pl. Ex. C.) These statistics merely demonstrate that the differences between the districts' management of their respective dockets

12

arc inconsequential. Thus, this factor bears no weight in this court's analysis of defendant's motion to transfer venue.

### b. Familiarity with applicable law

The Lease and Retail Agreements are governed by Illinois law but defendant contends that plaintiffs' claims "are not so unique to Illinois" that a federal court sitting in New York would have difficulty applying Illinois law. (Def. Mem. at 12.) Defendant cites *Information Tech. Int'l, Inc.* v. *ITI of N. Florida, Inc.*, No. 01 C 4668, 2001 WL 1516750, at *10 (N.D. Ill. Nov. 28, 2001) (Coar, J.), where the court transferred the case to the Middle District of Florida even though the transferee court would have to apply Illinois law.[3] The court in *Information Tech.*, however, did not determine that the Florida court was more familiar with Illinois law but rather that it had a stronger interest in the litigation than Illinois and was a more convenient venue. Although the court agrees that the New York district court could ably apply Illinois law, it is likely that a federal judge sitting in Illinois is more familiar with Illinois law than her New York counterpart. Thus, this factor disfavors transfer.

### c. Community interest in the dispute

New York retains some interest in the litigation because defendant, a New York automobile dealership, allegedly engages in fraudulent practices. By the same token, Illinois has an interest in the litigation because two of its corporate citizens allege they have been the victims of the fraudulent practices. *See Tranzact Tech., Inc.* v. *ISource Worldsite*, No. 01 C 8508, 2002 WL 122515, at *6 (N.D. Ill. Jan. 30, 2002) (Conlon, J.) (denying the defendant's motion to

---

[3]Defendant mis-cites *Murphy* v. *Avon Prod., Inc.*, 88 F. Supp. 2d 851, 853 (N.D. Ill. 1999), as support that courts transfer cases to forums that must apply another state's law. The court in *Murphy*, however, was unable to determine which state's law would apply to the case.

transfer venue case where complaint alleged breach of contract, unjust enrichment and breach of fiduciary duty, and stating that "Illinois has a strong interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors"). As the victims (and again assuming the truth of the allegations), plaintiffs' argument that they should not have to vindicate their claims in a distant forum is more persuasive than defendant's seeking a convenient forum in which to defend against the claims.

Plaintiffs' choice of forum of Illinois is entitled to substantial deference and defendant has not met its burden to demonstrate that transfer would be more convenient for the parties and the witnesses or would facilitate the interest of justice. Accordingly, the court will deny defendant's motion to transfer venue to the Southern District of New York.

## B. Motion to dismiss Counts I and IV

Defendant argues that the court should dismiss plaintiffs' claims under Counts I and IV. Defendant asserts that plaintiffs do not plead fraud in Count I with particularity as required by Federal Rule of Civil Procedure 9(b). Defendant also asserts that its alleged conduct does not implicate the protections of ICFA under Count IV.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all

14

reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

In addition to the mandates of Rule 12(b)(6), Rule 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." The Seventh Circuit has explained that "the rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

### 1. Count I: common law fraud

Defendant argues that plaintiffs fail to plead fraud with the particularity required by Rule 9(b) because plaintiffs do not identity the specific facts of each scheme, including the customers, dates, defendant's employees, and vehicles involved in each fraudulent transaction. Defendant asserts that plaintiffs plead only "hypotheticals" of each scheme. (Def. Mem. at 4.) Defendant relies on cases where courts rejected plaintiffs' fraud allegations under Rule 9(b). See *Sears* v. *Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing securities fraud complaint because it "contains no specific information about the alleged fraudulent activities as required by Rule 9(b)"); *United States ex rel. Robinson* v. *Northrop Corp.*, 149 F.R.D. 142, 145 (N.D. Ill. 1993) (dismissing *qui tam* action under the False Claims Act for lack of particularity, stating, *inter alia*, "[I]t is not enough for plaintiffs to allege that 'a Northrop engineer' or 'Northrop employees' or 'superiors' committed fraudulent acts" where the information was within the plaintiffs' knowledge); *Credit Ins. Consultants, Inc.* v. *Gerling Global Reins. Corp. of Am.*, 210 F. Supp. 2d

980, 983-84 (N.D. Ill. 2002) (holding that the plaintiffs "have not specified . . . any [defendant] employee or employees who committed the alleged acts of fraud"). In response, plaintiffs rely on *General Elec. Capital Auto* v. *Phil Smith Chrysler Plymouth, Jeep Eagle*, No. 00 C 0762, 2000 WL 1471615, at *5 (N.D. Ill. Oct. 2, 2000) (Grady, J.), where the court declined to dismiss a complaint with allegations quite similar to those made here,[4] stating,

> Phil Smith (who) prepared phony manufacturer invoices to be used to set inflated residual values on the car leases (what and how). Further, [Gelco] identifies a specific time and place at which the representations were made: on 210 occasions false documents were submitted by Phil Smith (from Florida) to [Gelco] (in South Carolina or Illinois) between July 1997 and August 1998.

*Id.* at *5.

The purposes of Rule 9 are "(1) to inhibit claims that are filed as a pretext to uncover unknown wrongs; (2) to protect defendants from the harm that results from charges of serious wrongdoing; and (3) to give defendants notice of the complained-of conduct, enabling defendants to prepare a defense." *Robinson*, 149 F.R.D. at 144, citing *Coronet Ins. Co.* v. *Seyfarth*, 665 F. Supp. 661, 666 (N.D. Ill. 1987). As in *General Elec.*, the "who" and "what," of the complaint are pled. As to the "how," even though specific contracts are not identified, the nature of the schemes is pled in considerable detail. Plaintiffs identify the approximate time at which the conduct began, the specific types of transactions, the manner in which the false

---

[4]In *General Elec.*, the plaintiff (which was Gelco) alleged a scheme in which the defendant would create a dummy invoice for a vehicle where it increased the manufacturer's suggested retail price ("MSRP") and used the inflated MSRP to set an equally inflated residual value, which, in turn, decreased the depreciation value of the vehicle. *Id.* at *1. As a result of the dummy invoices, Gelco received lower monthly lease payments than it should have received had the information been accurate and at the end of the lease a vehicle worth significantly less than its purported residual value. *Id.*

representations were made and relied on, and the consequences of plaintiffs' reliance.[5] Although there are no bright lines dividing compliance from non-compliance with Rule 9(b), the court believes that this complaint permits an inference that plaintiffs have investigated defendant's conduct to sufficiently to be able to lay out the schemes on which they base their complaint so as to dispel concern that they are fishing to uncover unknown wrongs, merely seeking to injure defendant by making charges of serious wrongdoing, or leaving defendant in the dark about what it is accused of doing.

It is difficult to compare cases such as *Robinson, Sears* and *Credit Insurance* because they arose in considerably different contexts and the actual complaints in those cases are not conveniently available for examination at this time. It appears, however, that in *Robinson*, the court most faulted the plaintiffs for failing to plead facts within their actual knowledge, whereas here the identity of defendant's employees who may have entered false information on documents is not known to plaintiffs. *See In re Newell Rubbermaid Inc. Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279, at *14 (N.D. Ill. Nov. 14, 2000) (Kennelly, J.) (citing the well-established rule that "a party may be excused from Rule 9(b)'s requirement of pleading with particularity if the information that he is required to plead rests exclusively within the defendants' control or is otherwise unavailable to him"). Clearly, in *Sears*, the court thought the complaint wholly lacking in detail. In *Credit Insurance*, the court was dealing with a complaint for promissory fraud, which "is generally not actionable in Illinois [unless] . . . the false promise or representation of intention of future conduct is the scheme or device to accomplish the

---

[5]Moreover, although pled under the breach of contract claim in Count II, plaintiffs identify the approximate number of times that defendant engaged in the credit fraud scheme against Gelco. (Compl. ¶ 40.)

17

fraud." 210 F. Supp. 2d at 984 (internal citations and quotations omitted). Because there was no allegation of such a scheme or device beyond the defendant's mere failure to fulfill the promise, the court dismissed the complaint. In all of these instances, the inference of inadequate investigation or improper purpose was more readily drawn than here.

Finally, and in deference to defendant's arguments, it certainly would be reasonable to dismiss and require plaintiffs at least to plead a sampling of specific transactions, with specific names of customers whose information was allegedly falsified by defendant or the specific vehicles allegedly misidentified by defendant. Nevertheless, the court believes the parties' time is better spent discovering this evidence as part of pretrial preparation.

For all of these reasons, the motion to dismiss Count I will be denied.

2.    *Count IV: ICFA*

To allege a cause of action under ICFA, a plaintiff must plead as follows: "(1) a misrepresentation or concealment (2) of a material fact (3) made with the intent to induce reliance and (4) in a course of conduct involving trade or commerce." *Olympic Chevrolet, Inc.* v. *General Motors Corp.*, 959 F. Supp. 918, 920 (N.D. Ill. 1997). The pleading requirements of a cause of action under ICFA are similar to pleading requirements for fraud. *Gallagher Corp.* v. *Mass. Mutual Life Ins. Co.*, 940 F. Supp. 176, 180 (N.D. Ill. 1996). Complaints under ICFA are proper where they state who made a purported misrepresentation, when and where such representation was made, and how the representation was communicated. *Id.*

Relying on *Brody* v. *Finch Univ. of Health Sci./The Chicago Med. Sch.*, 298 Ill. App. 3d 146, 158-59, 689 N.E.2d 257, 268 (1998), quoting *Lake County Grading Co. of Libertyville,*

18

*Inc.* v. *Advance Mech. Contractors, Inc.*, 275 Ill. App. 3d 452, 458, 654 N.E.2d 1109, 1116 (1995), defendant argues that ICFA does not apply in cases where "the underlying issue is whether a breach of contract occurred." (Def. Mem. at 6.) In such a case, plaintiffs must plead that the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *Brody*, 298 Ill. App. 3d at 159, 689 N.E.2d at 268-69, quoting *Lake County*, 275 Ill. App. 3d at 458, 654 N.E.2d at 1116. This is known as the "consumer nexus test." *Brody*, 298 Ill. App. 3d at 159, 689 N.E.2d at 268. Plaintiffs respond that they are required only to plead the elements of a violation of ICFA, which they have done, and further argue that consumer protection concerns are clearly implicated because the fraud involves trade practices (altering credit and vehicle information) directed to the market generally.

By merely pleading the elements of an ICFA claim, plaintiffs appear to assume that they are "consumers" within the ICFA.[6] If plaintiffs are consumers, such a pleading is likely sufficient and plaintiffs need not be concerned about the "consumer nexus test." *Duchossois Ind., Inc.* v. *Crawford & Co.*, No. 99 C 3766, 2001 WL 59031, at *3 (N.D. Ill. Jan. 19, 2001) (Gettleman, J.) ("[T]he consumer nexus test is applicable only when the plaintiff is not a consumer under the terms of the Act"). A consumer under ICFA is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Under this definition, however, it seems obvious that plaintiffs are not consumers–at least they have not

---

[6] The complaint alleges that the conduct constituting breach of contract and fraud in Counts I through III "occurred in the course of conduct involving trade or business" (Compl. ¶ 60) and caused "considerable economic harm" to plaintiffs. (*Id.* ¶ 62)

pled facts that would suggest they are. The contracts for financing arrangements, i.e., the Lease and Retail Agreements, which form the basis of the complaint are not contracts for the purchase of merchandise not for resale in the ordinary course of their trade or business but for their use or that of a member of their household.

Once it is assumed that plaintiffs are not consumers, it follows that plaintiffs must plead facts under the consumer nexus test. *Athey Prod. Corp.* v. *Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996), *3Com Corp.* v. *Elec. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 939 (N.D. Ill. 2000), and *Pain Prevention Lab, Inc.* v. *Elec. Waveform Labs , Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987), on which plaintiffs rely, confirm that plaintiffs do not plead facts to meet the consumer nexus test. *Athey*, and *3Com Corp.* both held the plaintiff's failure to allege a nexus between the complained of conduct and consumer protection concerns was fatal to the ICFA claim. In *Pain Prevention*, the complaint alleged that the defendant made misrepresentations about its product "in the marketplace to actual and/or prospective customers." 657 F. Supp. at 1493. Plaintiffs allege no misrepresentation to its actual or prospective customers here. In short, the complaint fails to allege a nexus between the defendant's conduct and consumer protection concerns.[7]

For these reasons Count IV will be dismissed with leave to plead with particularity facts in support of a nexus with consumer protection concerns. *See Strohmaier* v. *Yemm Chevrolet,*

---

[7]Furthermore, to the extent that plaintiffs seek to implicate consumer protection concerns, the consumers are located in New York and not Illinois. ICFA does not normally apply to out-of-state consumers. *See The Alcar Group, Inc.* v. *Corp. Performance Sys., Ltd.*, 109 F. Supp. 2d 948, 952 (N.D. Ill. 2000) ("Alcar makes no showing that the deceptive acts here affected Illinois customers or business conducted in Illinois"), citing *Oliveira* v. *Amoco Oil Co.*, 311 Ill. App. 3d 886, 897, 726 N.E.2d 51, 61 (2000), *rev'd in part and vacated in part on other grounds,* 201 Ill.2d 134, ___ N.E.2d ___ (2002).

211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001), quoting *Connick* v. *Suzuki Motor Co.,* 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996) ("An allegation of consumer fraud under the ICFA 'must be plead [*sic*] with the same particularity and specificity as that required under common law fraud.'"); *Chatman* v. *Fairbanks Capital Corp.,* No. 02 C 665, 2002 WL 1338492, at *6 (N.D. Ill. June 18, 2002) (Hibbler, J.) (same).

## ORDER

For the reasons stated above, the court denies defendant's motion to dismiss Count I and grants its motion to dismiss Count IV [#5-1] with leave for plaintiffs to replead on or before November 26, 2002. If an amended complaint is not filed by that date, the dismissal of Count IV shall be deemed a dismissal with prejudice. Defendant is directed to answer Count I by the November 26, 2002. Defendant's motion to transfer venue [#5-2] is denied. A status hearing is set for Tuesday, November 26, 2002 at 9:30 a.m.

ENTER: *Joan H. Lefkow*

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: October 30, 2002