IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GELCO CORPORATION, a Delaware corporation, and CUSTOMIZED AUTO CREDIT SERVICES, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 01 C 9719 |
| v. | ) ) ) | Judge Joan H. Lefkow Magistrate Judge Mason |
| MAJOR CHEVROLET, INC., a New York corporation, | ) ) ) | |
| Defendant. | ) ) | |

NOV 2 6 2002

**NOTICE OF FILING**

TO: David B. Johnson
Michael C. Andolina
Sidley Austin Brown & Wood
Bank One Plaza, 48th Floor
10 South Dearborn Street
Chicago, IL 60603

PLEASE TAKE NOTICE that on Monday, November 25, 2002, we filed with the Clerk of the United States District Court, Northern District Of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois, **MAJOR CHEVROLET, INC.'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES,** a true and correct copy of which is hereby served upon you.

Dated: November 25, 2002

Respectfully submitted,

GRIPPO & ELDEN

By: _____
One of the Attorneys for Defendant
Major Chevrolet, Inc.

Michael P. Conway
David E. Plunkett
GRIPPO & ELDEN
227 West Monroe Street
Suite 3600
Chicago, Illinois 60606
(312) 704-7700

9140v1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GELCO CORPORATION, a Delaware corporation, and CUSTOMIZED AUTO CREDIT SERVICES, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>MAJOR CHEVROLET, INC. a New York corporation,<br><br>    Defendant. | Case No. 01 C 9719<br><br>Judge Joan H. Lefkow<br>Magistrate Judge Mason |

## MAJOR CHEVROLET, INC.'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES

Major Chevrolet, Inc. ("Major Chevrolet"), hereby answers the Complaint of Gelco Corporation, f/k/a General Electric Capital Auto Financial Services, Inc. ("GECAFS") and Customized Auto Credit Services, Inc. ("CACS"), and asserts affirmative defenses as follows:

### NATURE OF THE ACTION

1. This Complaint is brought to recover damages incurred by GECAFS and CACS resulting from the fraudulent activities of Major Chevrolet, a New York auto dealership. Beginning in about 1998, Major Chevrolet engaged in a massive pattern of fraud involving falsification of documents. Defendant purposefully misidentified the options, features and/or condition of cars sold to GECAFS and CACS and provided to GECAFS falsified credit information about customers seeking to lease or purchase new and used vehicles. Furthermore, Defendant failed to provide either good and sole title or liens free of claims and encumbrances on numerous vehicles financed by GECAFS and CACS, respectively. As a result of these schemes, GECAFS and CACS have suffered significant damages.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 1 of the Complaint.

19666v1

## JURISDICTION AND VENUE

2. Gelco corporation is a Delaware corporation with its principal place of business in Barrington, Illinois. CACS is a Delaware corporation with its principal place of business in Barrington, Illinois.

**ANSWER:**

Major Chevrolet admits the allegations in Paragraph 2 of the Complaint.

3. On information and belief, Major Chevrolet is a New York corporation with its principal place of business in Long Island City, New York.

**ANSWER:**

Major Chevrolet admits the allegations in Paragraph 3 of the Complaint.

4. This Court has jurisdiction under 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.

**ANSWER:**

Major Chevrolet admits that complete diversity exists between the parties. Major Chevrolet also admits that the amount in controversy exceeds $75,000, but denies that plaintiffs are entitled to any amounts from Major Chevrolet and, therefore, denies the remainder of the allegations in Paragraph 4 of the Complaint

5. Venue is proper under 28 U.S.C. § 1391(a)(2). The contracts between GECAFS and Defendant and CACS and Defendant were entered into and/or performed in this district, and the Defendant's breach of these contracts occurred when the Defendant submitted fraudulent lease documents to GECAFS and retail installment contract documents to CACS in this district. The Defendant thereby committed tortious acts in this district.

**ANSWER:**

Major Chevrolet admits that venue is proper in this district, but denies the remainder of the allegations in Paragraph 5 of the Complaint. New York is a more convenient forum in which to litigate this matter. As a result, concurrent with filing its Answer and

19666v1

Affirmative Defenses, Major Chevrolet is moving to transfer this matter to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

6. Defendant entered into a Dealer Lease Plan Agreement (the "Lease Agreement") (Ex. A hereto) with GECAFS on October 30, 1989. Pursuant to the Lease Agreement, Defendant would negotiate lease terms with customers. If certain conditions were met, GECAFS paid Defendant the price Defendant had negotiated with the customer for the vehicle less any acquisition fees and/or down payment, and defendant then assigned to GECAFS the lease and all of Defendant's rights, title and interest in the vehicle.

### ANSWER:

Major Chevrolet admits that GECAFS executed the Lease Agreement on October 30, 1989. Major Chevrolet executed the Lease Agreement prior to that date in New York. Major Chevrolet further states that the terms of the Lease Agreement speak for themselves and to the extent that any of the allegations in Paragraph 6 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

7. Defendant also entered into a Dealer Retail Agreement (the "Retail Agreement") (Ex. B hereto) with CACS on December 21, 1995. Pursuant to the Retail Agreement, Defendant would negotiate retail sale contracts with customers. If certain conditions were met, CACS paid Defendant the price Defendant had negotiated with the customer for the contract less any acquisition fees and/or down payment, and defendant assigned to CACS the contract and all of Defendant's rights therein.

### ANSWER:

Major Chevrolet admits that CACS executed the Retail Agreement on December 21, 1995. Major Chevrolet executed the Retail Agreement prior to that date in New York. Major Chevrolet further states that the terms of the Retail Agreement speak for themselves and to the extent that any of the allegations in Paragraph 7 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

-3-

19666v1

## The Credit Fraud Scheme

8. For each lease sold to GECAFS, Defendant was required to submit documentation to GECAFS, including a completed customer credit application. The customer credit application was completed as part of the lease or sale contract negotiation process and used by GECAFS to determine the customer's credit-worthiness.

**ANSWER:**

Major Chevrolet states that the terms of the Lease Agreement speak for themselves and to the extent that any of the allegations in Paragraph 8 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

9. On information and belief, Defendant's employees obtained relevant credit information by interviewing the customer and completing a credit application. Among other information, customers were asked to provide their employment history, current employer, job title, salary and occasionally proof of income.

**ANSWER:**

Major Chevrolet admits that, consistent with its contractual obligations under the Lease Agreement and Retail Agreement, it obtained credit information from customers and completed credit applications for customers. Major Chevrolet also admits that among the information it obtained from certain customers was their employment history, current employer, job title, salary and other income. Major Chevrolet denies any remaining allegations in this paragraph. Major Chevrolet further states that plaintiffs independently investigated customers' credit worthiness and made financing decisions based on those investigations.

10. Defendant then faxed the completed credit application to GECAFS in Barrington, Illinois and the information from the application was input into the GECAFS computer system. GECAFS also retrieved credit bureau reports describing the credit history of each customer for whom a credit application was submitted. The credit bureau reports typically did not include information about the customer's employment history, current employer, job title, or salary.

-4-

19666v1

**ANSWER:**

Major Chevrolet admits that it faxed credit applications to GECAFS in Illinois. Major Chevrolet lacks sufficient knowledge of the remainder of the allegations in Paragraph 10 of the Complaint and, therefore, denies them.

11. Using the information from the customer's credit application and the customer's credit bureau reports, GECAFS determined the customer's credit-worthiness and provided a "credit call" for the customer. GECAFS either approved the lease deal with no stipulations, approved the lease deal with certain stipulations, or rejected the lease deal.

**ANSWER:**

Major Chevrolet admits that GECAFS either approved lease deals, approved lease deals with stipulations, or rejected lease deals. Major Chevrolet lacks sufficient knowledge of the remainder of the allegations in Paragraph 11 of the Complaint and, therefore, denies them.

12. GECAFS then faxed its credit decision back to Defendant. Defendant completed the necessary paperwork and upon approval, GECAFS provided payment for the lease and vehicle to the dealer.

**ANSWER:**

Major Chevrolet admits the allegations in Paragraph 12 of the Complaint.

13. Beginning in or about April 1999, Defendant engaged in a scheme to defraud GECAFS. Defendant purposefully misrepresented information on customer credit applications that were sent to GECAFS. Specifically, the Defendant misrepresented customers' employment history, job status, salary information, and secondary income sources and amounts. For example, a customer who reported that he or she worked as a cable splicer with a monthly salary of $2,400 would be reported by the Defendant as a regional manager with a monthly salary of $6,300. On numerous occasions, Defendant also falsified other credit application information, including but not limited to the amount of money the customer had provided as a down payment for the lease.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 13 of the Complaint.

19666v1

14. On other occasions, Defendant substituted the credit information of a third party as lessee instead of the credit information of the individual utilizing the vehicle. For example, in situations where the prospective lessee was thought to have credit either insufficient or too poor to lease a vehicle, Defendant would list a family member or friend with better credit as the lessee of the vehicle and submit to GECAFS that individual's credit information. In reality, the car was being utilized by the first individual with insufficient or poor credit and that individual would be the person making payments to GECAFS and the primary insured.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 14 of the Complaint.

15. On information and belief, in most cases, Defendant's misrepresentations are made without the knowledge of customers.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 15 of the Complaint.

16. GECAFS made credit decisions relying on the falsified credit information provided by Defendant. GECAFS agreed to finance leases that it would not otherwise have financed and provided more favorable credit terms than certain customers would have been offered if their credit information had been reported accurately by Defendant.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 16 of the Complaint.

17. As a result of the Defendant's misrepresentation of credit information, GECAFS has experienced significant losses from customers' lease defaults and failures to make timely lease payments.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 17 of the Complaint.

**The Vehicle Misidentification Scheme -- Lease Vehicles**

18. For vehicles it leased, Defendant was also required to submit to GECAFS a properly completed lease form and a vehicle condition report providing the purchase price of the vehicle, and identifying the vehicle's make, model and "trim level" -- i.e., the package of amenities and features included on the vehicle.

-6-

**ANSWER:**

       Major Chevrolet denies the allegations in Paragraph 21 of the Complaint.

    22.    The Defendant would negotiate a capitalized cost in line with the market value of the vehicle. The falsified documents were used only to set residual values. The lease, along with the falsified documents, was submitted to GECAFS in Barrington, Illinois.

**ANSWER:**

       Major Chevrolet denies the allegations in Paragraph 22 of the Complaint.

### The Vehicle Misidentification Scheme -- Retail Vehicles

    23.    For vehicles it sold to customers that were financed by CACS, Defendant was required to submit documentation identifying the sale price Defendant had negotiated with the customer, the actual "book value" of the vehicle, (i.e., the "trade-in" value of the vehicle as listed in the *NADA Official Used Car Guide*) the trim level of the vehicle, and any options already present or installed by the dealer on the vehicle.

**ANSWER:**

       Major Chevrolet states that the terms of the Retail Agreement speak for themselves and to the extent that any of the allegations in Paragraph 23 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

    24.    Pursuant to CACS' retail program guidelines, for approved sales made by the Defendant, CACS agreed to finance up to 115% of the total NADA trade-in value of used vehicles. Additionally, CACS agreed to finance tax, title, license and warranty protection up to a total financed value of not more than 140% of NADA trade-in value.

**ANSWER:**

       Major Chevrolet states that the terms of the Retail Agreement speak for themselves and to the extent that any of the allegations in Paragraph 24 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

    25.    Beginning in or about August 1998, the Defendant engaged in a scheme to defraud CACS. The Defendant purposefully misidentified trim levels and/or vehicle options on documents provided by CACS for vehicles it had sold. The falsified documents were submitted

-8-

to CACS in Barrington, Illinois and stated that vehicles sold by the Defendant included options that were not actually installed and/or misidentified the trim level of the vehicle.

**ANSWER:**

        Major Chevrolet denies the allegations in Paragraph 25 of the Complaint.

        26.     As a result of these misrepresentations concerning trim levels and value-added options, the Defendant misrepresented the NADA trade-in value of the vehicles. For example, in early 2000, the NADA trade-in value of a 1997 Nissan Altima **GLE** was $14,850. The NADA trade-in value of the same vehicle, with the a [sic] corrected trim level of **GXE**, was $10,625.

**ANSWER:**

        Major Chevrolet denies the allegations in Paragraph 26 of the Complaint.

        27.     Increasing the NADA trade-in value of the vehicle allowed the Defendant to increase the maximum amount financed from CACS on deals that otherwise would have been financed for a lower amount (or would not have been financed at all) if the Defendant had provided accurate information about vehicle trim level and/or vehicle options -- and thus had provided the true NADA trade-in value of the vehicle.

**ANSWER:**

        Major Chevrolet denies the allegations in Paragraph 27 of the Complaint.

        28.     As a result of Defendant's misrepresentation, in many cases CACS provided financing above and beyond its 115% limitation of the proper NADA trade-in value of vehicles. Furthermore, even when the vehicle advance did not exceed the 115% limit, the Defendant's falsification of the vehicle trim level and/or options artificially decreased the vehicle advance/NADA trade-in value ratio and at times resulted in the customer receiving more favorable credit terms than would have been provided if the true advance ratio had been known.

**ANSWER:**

        Major Chevrolet denies the allegations in Paragraph 28 of the Complaint.

        29.     In addition to the schemes described above, Defendant has also engaged in various other fraudulent conduct that violated the Lease and Retail Agreements.

**ANSWER:**

-9-

Major Chevrolet denies the allegations in Paragraph 29 of the Complaint.

30. On numerous occasions, Defendant sold to GECAFS: (a) vehicles that had been previously repurchased by the manufacturer (lemons); (b) vehicles with odometer reporting discrepancies (which caused improper residual value calculation); (c) vehicles that had been used for Taxi and Livery purposes; and/or (d) vehicles of Canadian origin.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 30 of the Complaint.

31. On numerous occasions, Defendant failed to provide free and clear titles on vehicles it sold to GECAFS pursuant to the Lease Agreement. On other occasions, defendant failed to provide perfected liens, free and clear of claims or other encumbrances, pursuant to the Defendant's Retail Agreement with CACS.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 31 of the Complaint.

## COUNT I
## FRAUD

32. GECAFS and CACS incorporate by reference paragraphs 1 through 31.

**ANSWER:**

Major Chevrolet hereby incorporates its responses to Paragraphs 1 through 31.

33. The Defendant's misrepresentation of customers' credit information and its submission of falsified customer credit applications was done with the intent to mislead GECAFS.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 33 of the Complaint.

34. The Defendant's failure to identify vehicles that had been repurchased by the manufacturer (lemons); vehicles with odometer discrepancies (where the residual was calculated with a different mileage than that submitted to the state), vehicles that had been used for Taxi and Livery purposes; and/or vehicles of Canadian origin was done with the intent to mislead GECAFS.

19666v1

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 34 of the Complaint.

35. The Defendant's misrepresentation of the residual value of vehicles and its submission of fraudulent vehicle condition reports, odometer readings, residual calculation worksheets, purchase order lease worksheets, and vehicle book-out sheets was done with the intent to mislead GECAFS and CACS.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 35 of the Complaint.

36. GECAFS and CACS reasonably relied upon the representations and documents provided by the Defendant.

**ANSWER:**

Major Chevrolet is without information sufficient to form a belief as to the truth of the allegations and therefore denies the allegations in Paragraph 36.

37. GECAFS and CACS have been damaged by over $2.95 million by the misrepresentations.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 37 of the Complaint.

## COUNT II
## BREACH OF CONTRACT -- Dealer Lease Plan Agreement

38. GECAFS and CACS incorporate by reference paragraphs 1 through 37.

**ANSWER:**

Major Chevrolet hereby incorporates its responses to Paragraphs 1 through 37.

39. The Defendant promised that for each lease and leased vehicle that it was selling and that GECAFS was buying, "[a]ny credit information furnished by the dealer as to the lessee is true, complete and accurate to the best of dealer's information and belief." (Ex.A, ¶ 6(e)).

-11-

19666v1

**ANSWER:**

Major Chevrolet states that the terms of the Lease Agreement speak for themselves and to the extent that any of the allegations in Paragraph 39 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

40. The Defendant breached this contract in each of the approximately 1,000 transactions where it intentionally provided false customer credit information.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 40 of the Complaint.

41. The Defendant also promised, for each lease and lease vehicle that it was selling and that GECAFS was buying, that the vehicle GECAFS was buying was the vehicle identified by the vehicle condition report, lease form and/or other documentation submitted to GECAFS.

**ANSWER:**

Major Chevrolet states that the terms of the Lease Agreement speak for themselves and to the extent that any of the allegations in Paragraph 41 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

42. The Defendant breached this contract in each of the transactions in which it fraudulently misidentified vehicle trim levels and/or odometer readings and overstated residual value.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 42 of the Complaint.

43. The defendant promised that for each lease and lease vehicle that it was selling and that GECAFS was buying, that the Defendant "had good title to the lease and the leased vehicle both of which shall be free and clear of all liens and encumbrances." (Ex. A, ¶6(a)).

**ANSWER:**

-12-

19666v1

Major Chevrolet states that the terms of the Lease Agreement speak for themselves and to the extent that any of the allegations in Paragraph 43 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

44. The Defendant breached this contract in each of the transactions in which it refused to provide free and clear title to vehicles leased by Defendant and sold to GECAFS.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 44 of the Complaint.

45. Pursuant to the Lease Agreement, because of its breach of contract, the Defendant is obligated to repurchase each vehicle subject to a lease for which it breached the contract. The repurchase price is the sum of:

> (1) the residual value of the leased vehicle; (2) the aggregate of all passed due lease payments; and (3) the amount which is the product of the monthly depreciation factor times the number of months remaining in the lease term.

(Ex. A, ¶ 8(a)). In addition, the Defendant must pay any tax assessed on the repurchase and any fees or taxes the lessee is obligated to pay. (Id.)

**ANSWER:**

Major Chevrolet states that the terms of the Lease Agreement speak for themselves and to the extent that any of the allegations in Paragraph 45 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

46. On August 17, 2001 and September 5, 2001, GECAFS made demands on the Defendant to repurchase all leases and leased vehicles for which incorrect, misleading or fraudulent information was submitted to GECAFS and to compensate GECFAS for losses sustained where information was misrepresented. The Defendant has refused to make these payments or to repurchase the vehicles.

**ANSWER:**

19666v1

Upon information and belief, Major Chevrolet admits that in or about August and September 2001, GECAFS requested that Major Chevrolet repurchase certain leases and leased vehicles. Major Chevrolet also admits that it has refused this request. Major Chevrolet denies the remaining allegations in Paragraph 46 of the Complaint.

47. The Defendant's breach of the Lease Agreement, and its refusal to make the payments demanded or repurchase the vehicles has damaged GECAFS.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 47 of the Complaint.

48. GECAFS has fully performed all its obligations under the Dealer Lease Plan Agreement.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 48 of the Complaint. GECAFS has failed to fully perform under the Lease Agreement by failing to enforce its contractual rights against customers, including failing to seek repossession of customers' vehicles or otherwise mitigating plaintiffs' alleged damages.

### COUNT III
### BREACH OF CONTRACT -- Retail Agreement

49. GECAFS and CACS incorporate by reference paragraphs 1 through 48.

**ANSWER:**

Major Chevrolet hereby incorporates its responses to Paragraphs 1 through 48.

50. The Defendant promised, for each retail contract that it was selling and that CACS was buying, that "[t]he vehicle and all options therein are accurately described in the Contract and that such Vehicle was delivered by Dealer and accepted by Buyer(s)." (Ex. B, ¶ 10(J)).

-14-

19666v1

**ANSWER:**

Major Chevrolet states that the terms of the Retail Agreement speak for themselves and to the extent that any of the allegations in Paragraph 50 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

51. The Defendant breached this contract in each of the transactions in which it fraudulently misidentified vehicle trim levels or value added options.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 51 of the Complaint.

52. The Defendant also promised, for each retail contract that it was selling and that CACS was buying, that "[t]he contract is owned by the Dealer at the time or sale to Buyer(s), and is free and clear from all liens, set-offs or counterclaims." (Ex. B, ¶ 10(E)).

**ANSWER:**

Major Chevrolet states that the terms of the Retail Agreement speak for themselves and to the extent that any of the allegations in Paragraph 52 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

53. The Defendant breached this contract in each of the transactions in which it failed to provide perfected liens, free and clear of claims or other encumbrances.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 53 of the Complaint.

54. Pursuant to the Retail Agreement, because of its breach of contract, the Defendant is obligated to repurchase each contract for which it submitted fraudulent documentation or failed to provide a perfected lien to CACS. The repurchase amount includes one or more of the following amounts at the election of CACS:

> (1) the unpaid balance, as determined by CACS, of any or all Contracts purchased hereunder, less any unearned finance charges and any discounts in connection with such Contracts; (2) all losses and expenses incurred by CACS as a result of such breach, or untruth, or failure to perform,

> including attorneys fees; and (3) out-of-pocket expenses paid or incurred by CACS in connection with the collection of any amount due under any such Contract, including attorneys' fees and costs of litigation, whether by or against CACS, and expenses with respect to repossessing, storing, repairing and selling the Vehicle.

(Ex. B, ¶ 11).

**ANSWER:**

Major Chevrolet states that the terms of the Retail Agreement speak for themselves and to the extent that any of the allegations in Paragraph 54 of the Complaint are inconsistent with those terms, Major Chevrolet denies such allegations.

55. On August 17, 2001 and September 5, 2001, GECAFS and CACS made demands on the Defendant to repurchase retail contracts and to compensate GECFAS and CACS for losses sustained where information was misrepresented. The Defendant has refused to make these payments or repurchase the vehicles.

**ANSWER:**

Upon information and belief, Major Chevrolet admits that in or about August and September 2001, GECAFS and CACS requested Major Chevrolet to repurchase certain sales contracts. Major Chevrolet also admits that it refused this request. Major Chevrolet denies the remaining allegations in Paragraph 55 of the Complaint.

56. The Defendant's breach of the Retail Agreement, and its refusal to make the payments demanded or repurchase the vehicles has damaged CACS.

**ANSWER:**

Major Chevrolet denies the allegations in Paragraph 56 of the Complaint.

57. CACS has fully performed all its obligations under the Dealer Retail Agreement.

**ANSWER:**

-16-

19666v1

Major Chevrolet denies the allegations in Paragraph 57 of the Complaint. GECAFS has failed to fully perform under the Retail Agreement by failing to enforce its contractual rights against customers, including failing to seek repossession of customers' vehicles or otherwise mitigating plaintiffs' alleged damages.

## COUNT IV
## ILLINOIS CONSUMER FRAUD ACT

58. GECAFS and CACS incorporate by reference paragraphs 1 through 57.

**ANSWER:**

Because Judge Lefkow granted Major Chevrolet's motion to dismiss Count IV of the Complaint on October 30, 2002, no response is required.

59. The Defendant was engaged in the business of selling and leasing automobiles.

**ANSWER:**

Because Judge Lefkow granted Major Chevrolet's motion to dismiss Count IV of the Complaint on October 30, 2002, no response is required.

60. The deceptive and fraudulent acts of the Defendant with respect to GECAFS and CACS occurred in the course of conduct involving trade or commerce, and thus constitute violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 814 ILCS 505/1, *et seq.*

**ANSWER:**

Because Judge Lefkow granted Major Chevrolet's motion to dismiss Count IV of the Complaint on October 30, 2002, no response is required.

61. The Defendant intended that GECAFS and CACS rely upon its deceptive acts, including but not limited to the dealers' pattern of falsifying customer credit information and misrepresentation of vehicle trim levels for lease vehicles and vehicle trim and option levels for retail sale documents.

-17-

19666v1

**ANSWER:**

Because Judge Lefkow granted Major Chevrolet's motion to dismiss Count IV of the Complaint on October 30, 2002, no response is required.

62. As a direct result of the Defendant's conduct, GECAFS and CACS have suffered considerable economic harm. GECAFS and CACS have also incurred substantial investigative and litigation expenses in connection with the Defendant's fraudulent schemes.

**ANSWER:**

Because Judge Lefkow granted Major Chevrolet's motion to dismiss Count IV of the Complaint on October 30, 2002, no response is required.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiffs have waived and relinquished any rights to their claims.

### SECOND DEFENSE

Plaintiffs have estopped from seeking their claims for relief.

### THIRD DEFENSE

Plaintiffs' claims are barred by laches.

### FOURTH DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations.

### FIFTH DEFENSE

Plaintiffs have failed to mitigate their alleged damages.

### SIXTH DEFENSE

Plaintiffs' claims are barred by accord and satisfaction.

19666v1

### SEVENTH DEFENSE

Plaintiffs' claims are barred by ratification.

### EIGHTH DEFENSE

Plaintiffs' claims are barred because plaintiffs failed to enforce contractual rights against customers.

### NINTH DEFENSE

Plaintiffs' claims are barred by unclean hands.

### TENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by plaintiffs' negligence, contributory negligence, or both.

Dated: November 25, 2002

Respectfully submitted,

GRIPPO & ELDEN

By: _____

One of the Attorneys for Defendant
Major Chevrolet, Inc.

Michael P. Conway
David E. Plunkett
Peter S. Roeser
GRIPPO & ELDEN
227 West Monroe Street
Suite 3600
Chicago, Illinois 60606
(312) 704-7700

-19-

19666v1

## CERTIFICATE OF SERVICE

I, Peter S. Roeser, an attorney, certify that on November 25, 2002, I caused a true and complete copy of the foregoing **MAJOR CHEVROLET, INC.'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES** to be served on counsel for plaintiffs by messenger delivery to the following address:

>David B. Johnson, Esq.
>Michael C. Andolina, Esq.
>Sidley Austin Brown & Wood
>Bank One Plaza, 48th Floor
>10 South Dearborn Street
>Chicago, IL 60603

Peter S. Roeser

19666v1